WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peggy Curtis Clemmons,<br><br>    Plaintiff,<br><br>v.<br><br>Andrew Saul,<br><br>    Defendant. | No. CV-19-0591-TUC-LCK<br><br>**ORDER** |

  Plaintiff Peggy Clemmons filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Clemmons's Opening Brief, Defendant's Responsive Brief, and Clemmons's Reply. (Docs. 18, 21, 22.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the Administrative Record, the Court remands this matter for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

  Clemmons was born in July 1968, making her 46 years of age at the onset date of her alleged disability. (Administrative Record (AR 199).) Clemmons held various short-term jobs but has no relevant past work history. (AR 210-13.) Clemmons filed an application for Supplemental Security Income (SSI) in September 2016. (AR 199.) She alleged disability from February 1, 2015. (*Id.*) Clemmons's application was denied upon initial review (AR 83-98) and on reconsideration (AR 100-18).

A hearing was held on August 13, 2018 (AR 57-82), after which the ALJ found that Clemmons was not disabled (AR 24-32). The ALJ determined Clemmons had severe impairments of affective disorder and anxiety disorder. (AR 26.) The ALJ concluded Clemmons had the Residual Functional Capacity (RFC) to perform work at all exertional levels but with the non-exertional limitations of simple work and no more than occasional contact with the public or co-workers. (AR 28.) The ALJ concluded at Step Five, based on the testimony of a vocational expert (VE), that Clemmons could perform work that exists in significant numbers in the national economy. (AR 31-32.) The Appeals Council denied review of the ALJ's decision. (AR 1.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; and (2) has a severe physical or mental impairment; and (3) the impairment meets or equals the requirements of a listed impairment; or (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to

deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Clemmons alleges the ALJ committed three errors: (1) the ALJ failed to include persistence limitations found by consulting psychologist Rohen; (2) the ALJ failed to provide clear and convincing reasons for rejecting Clemmons's symptom testimony; and (3) the ALJ erred in giving reduced weight to the opinion of Nurse Practitioner Shames.

**Medical Opinion of Dr. Noelle Rohen**

After a December 6, 2016 examination, Psychologist Noelle Rohen diagnosed Clemmons with unspecified depressive disorder with psychosis and anxious distress. (AR 462.) Dr. Rohen opined that Clemmons's understanding and memory were fair, good enough to follow three-step instructions. (AR 463.) She found mild attentional lapses during the MMSE, which could occur at work. (*Id.*) She noted that Clemmons had reported a history of failure to persist in jobs due to stress but demonstrated no persistence problem during the psychological exam. (*Id.*) Finally, she determined that Clemmons could appropriately dress, groom, relate, learn new tasks, and avoid hazards (although hallucinations could cause distractions). (*Id.*)

The ALJ gave Dr. Rohen's opinion substantial weight, finding her rationale and conclusions consistent with the treatment record, objective findings, and medical evidence

as a whole. (AR 30.) Under the regulations, medical opinions are "judgments about the nature and severity of your impairments(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s) and your physical and mental restrictions." 20 C.F.R. § 416.927(a)(1). The ALJ was required to evaluate those portions of Dr. Rohen's report that qualified as medical opinion. 20 C.F.R. § 416.927(b) & (c) ("we will always consider the medical opinions in your case record"; "we will evaluate every medical opinion we receive.") Portions of Dr. Rohen's report qualified as medical opinion and the ALJ took note of them, such as Clemmons's ability to follow basic instructions, mild attentional lapses, and possible distraction due to hallucinations. (AR 30.)

Clemmons challenges the ALJ's failure to account for what she identifies as a persistence limitation found by Dr. Rohen. The entirety of Dr. Rohen's statement on the topic of Clemmons's sustained concentration and persistence was as follows:

> Mild attentional lapses seen on MMSE suggest there may be mild lapses at work. Persistence historically has reportedly been the greater issue, with claimant having found workplaces too stressful to stay (per claimant). She persisted without any clear duress for today's interview.

(AR 463.) The statement on persistence was not a judgment by the psychologist. She merely noted that Clemmons reported a historical problem with persistence, but the psychologist did not witness any limitation in that area during the exam. Dr. Rohen offered no judgment about this reported symptom history, she merely documented it. In the category of sustained concentration and persistence, the psychologist found only a mild concentration limitation and no persistence limitation. Because Dr. Rohen's statement upon which Clemmons relies did not amount to a medical opinion, the ALJ did not err in failing to evaluate or give weight to this statement by Dr. Rohen.

**Symptom Testimony**

Clemmons argues the ALJ failed to provide clear and convincing reasons to reject her testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court]

cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Clemmons had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 29.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support her discounting of Clemmons's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

In an undated function report, Clemmons reported not wanting to leave her home and being unable to stay out for long periods of time due to back pain. (AR 220.) She described being independent in self-care but cooked only simple things or ate food made by a friend. (AR 222.) She reported trying to clean (AR 221) but also stated she didn't do any house or yard work (AR 222-23). She indicated not leaving her home alone due to panic attacks, and she did not drive due to medication. (AR 223.) She grocery shopped one time per month. (AR 223.) She stated that she cried a lot and slept on-and-off throughout the day due to medication, and she was unable to focus on reading or television. (AR 221,

224.) She attended church when she could, went to doctor's appointments, and visited with her roommate. (AR 224.) She reported problems getting along with others and low stress tolerance. (AR 224-26.)

Clemmons completed two function reports in October 2016 that were quite similar. Clemmons reported frequent depression, crying, anger, and hallucinations; her medication caused her to feel tired and dizzy, physically unstable (clumsy), and she had difficulty concentrating. (AR 252, 258, 261, 267.) She reported staying home most of the time, sleeping and eating, and felted limited by COPD. (AR 253, 259, 261.) She was self-sufficient with personal care and prepared her own simple food. (AR 254, 263.) She did dishes and other cleaning about two times a week for three hours, such as dusting, mopping, or ironing, and walked her dog. (AR 253, 255, 264.) She did not drive and did not like going out alone; she grocery shopped once per month and attended medical appointments as needed. (AR 255, 256, 264.) She spent time watching television, reading, and took classes at CODAC or went to church on good days. (AR 256, 262, 265.) She had difficulty getting along with others, did not socialize much, and panicked in groups, but would sometimes sit on the porch so as not to sleep all day. (AR 257, 262, 266.) She reported not being able to follow instructions well and handling stress poorly. (AR 257, 258, 266, 267.) Clemmons completed another function report on January 15, 2017, in which she reported similar information. (AR 282-89.)

At the August 2018 hearing, Clemmons testified to fatigue, clumsiness (from medication), excessive crying, and hallucinations. (AR 63-64, 70.) During a typical day she would not leave her house a lot but would try to walk her dog. (AR 64.) She did chores such as washing dishes, cooking, cleaning, and laundry for 4 to 5 hours with 10-minute breaks every hour. (AR 65.) Clemmons stated that 3 or 4 days per week she did not do any of those activities but stayed in bed and slept due to depression. (AR 65-66.) When she had to be around people, such as on the bus, it sometimes made her angry. (AR 68-69.)

The ALJ gave reduced weight to Clemmons's symptom testimony because her problems were primarily due to "family and losses" and, in August 2018, her primary care

doctor documented no abnormalities in thought process and that she was oriented times three. (AR 29.) The ALJ stated that her "symptoms did not appear to be incapacitating despite a regular assessment of a GAF score of 40." (*Id.*) Specifically, she found that Clemmons's level of functioning was inconsistent with her allegations that her impairments precluded work – independent in activities of daily living, did household chores for up to five hours, lived with friends, was able to care for her dog and complete self-care, used public transportation, shopped 1 to 2 times per month, handled money appropriately, read, watched television, attended church, and was able to follow simple instructions. (*Id.*) Further, she received appropriate treatment for depression and anxiety with no complications from prescribed medication. (*Id.*)[1]

When the ALJ concluded that Clemmons's problems were primarily due to "family and losses," she cited several pages and sections in the record. (AR 29 (*citing* Ex. 18F, 19F, and 35F/12, 20, 36, 67, 79, 82).) The cited records are from CODAC, including case management notes, psychiatric progress notes, and therapy progress notes. Many of these records include a listing of the five axes as defined in the DSM-IV. According to the DSM-IV, "Axis IV is for reporting psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders (Axes I and II)." American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM IV*"), at 31 (4th ed. 2000). Under Axis IV in the cited records, which span the years 2013 to 2018, it states: Problems with/related to family, "everything stresses me out"[;] Significant recent losses as of 11/29/2012." (*See, e.g.*, AR 802.) All of the cited records use this identical language; however, the body of the documents include varied updates on how Clemmons is doing as of the date of the note. The records do not reflect that Clemmons's mental health symptoms arose from family issues or "losses." During this entire period, she was

---

[1] During the discussion of Clemmons's symptom testimony, the ALJ noted that Clemmons had used marijuana throughout the relevant period, which may have exacerbated her symptoms. (AR 29.) It is not evident that the ALJ relied upon this to discount Clemmons's symptom testimony and she did not cite any evidence to support her finding. Defendant does not argue that this statement is relevant to the analysis (Doc. 21 at 15); therefore, the Court does not evaluate it further.

diagnosed with PTSD and major depressive disorder recurrent severe with psychosis or bipolar I disorder (most recent episode depressed with psychotic features). (*See, e.g*, AR 654, 802.) The notations as to Axis IV, which appear to have been drafted in 2012 or 2013, do not directly reflect upon the severity of her Axis I diagnoses or her functionality throughout the relevant period. Further, the ALJ offered no explanation as to why identified psychosocial problems, stemming from loss, family issues or other bases, would be incompatible with incapacitating symptoms from a mental disorder. No justification for the ALJ's reasoning is self-evident. The Court finds that this boilerplate language in the records, as to Clemmons's psychosocial problems, are not a clear and convincing reason to discount her symptom testimony.

Next, the ALJ discounted Clemmons's symptom testimony because on August 22, 2018, her primary care doctor documented her as oriented to time, place, and person, and with no thought abnormalities. (AR 1074.) The cited record is not from a primary care physician but from a nurse practitioner at a pain management practice. A singular record from an appointment regarding physical pain is not clear and convincing evidence that a claimant's symptom testimony regarding her mental health is not credible. During a primary care appointment, also from the summer of 2018, a screening documented Clemmons as having severe depression. (AR 1000.) Defendant contends that the ALJ did not rely solely on the findings from non-mental health providers and that Clemmons had numerous unremarkable mental health exams. (Doc. 21 at 15.) In fact, the ALJ did not cite or rely upon "normal" findings from mental health providers to discount Clemmons's symptom testimony. (AR 29.) Therefore, even if true, the Court cannot affirm the ALJ on this basis. *See Orn*, 495 F.3d at 630. Clemmons's mental health records do reflect some normal findings and universally document her as being oriented to time, place, and person (typically with appropriate thought content), while also documenting serious mental health symptoms such as hallucinations, agoraphobia, anger and impulse control problems, and severe depression. (*See, e.g.*, AR 354, 425, 432, 436, 442, 444-45, 803, 807, 834-35.) Thus,

the fact that Clemmons was oriented and without thought abnormalities on a particular day, does not diminish her report of other severe symptoms.

The ALJ also concluded that Clemmons's activities of daily living were incompatible with debilitating symptoms precluding work. If a claimant's activities contradict her testimony, or the claimant spends a substantial portion of her day at activities that involve skills transferable to a work setting, those circumstances can form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that Clemmons's activities of daily living were not consistent with her allegations of complete disability. In particular, the ALJ cited Clemmons's independence with activities of daily living, caring for her dog and doing household chores for up to 5 hours, living with friends, grocery shopping 1 or 2 times per month, using public transport, attending church, reading, watching television, following instructions, and appropriately handling money. The ALJ provided no further explanation as to how these particular activities were inconsistent with her testimony that her symptoms prevented her from working. For example, being able to handle money, living with a friend, reading, and watching television are not incompatible with disabling symptoms.

The ALJ's summary of Clemmons's activities lacks the nuance found in her actual testimony. Although Clemmons reported feeding her dog and trying to walk her, she also indicated that her friend or roommate helped as needed. (AR 221, 253, 262, 283.) At the hearing, when Clemmons testified to doing 4 to 5 hours of chores in a day, she also testified that three or four days per week she stayed in bed and did no activity. (AR 65-66.) In one function report she indicated trying to clean but, also, that she did no housework and spent most of her time sleeping. (AR 221-23.) Her other function reports indicated doing some cleaning a few times per week. (AR 255, 264.) Clemmons indicated in three reports that she grocery shopped once per month (AR 223, 255, 265), and in one report stated she went one or two times per month (AR 285). She also stated, however, that she generally did not go out alone. (AR 223, 255, 264, 285.) Finally, Clemmons stated in one report that she attended church weekly and in other reports indicated she went as able. (AR 224 ("when I

can pull myself out of my house"), 256 ("on a good day"), 265 ("every Sunday"), 286.) In two reports, Clemmons stated she could follow instructions, but also indicated that her ability to concentrate was affected and that she did not complete activities. (AR 225, 287.) In other reports, she again noted that she did not complete tasks and stated that she did not follow instructions well due to concentration problems. (AR 257, 266.)

Contrary to Defendant's argument that this Court must defer to the ALJ's findings because they are a rationale interpretation of the evidence, the ALJ consistently highlighted the most functional evidence while ignoring Clemmons's testimony that undermined that interpretation. It is not that the ALJ adopted one of two or more reasoned interpretations of the record, he erroneously relied upon only a portion of the available evidence. *See Orn*, 495 F.3d at 630 (requiring court to uphold ALJ if decision is a rational interpretation of the evidence but only upon examination of the record as a whole) (quoting *Robbins*, 466 F.3d at 882). The Court finds there is not substantial evidence to support the ALJ's selective summary of Clemmons's day to day activities. Overall, Clemmons's reports and testimony are consistent in revealing that she left her house infrequently (primarily to walk her dog or attend medical appointments) and rarely alone. To the extent she was able to perform activities in the house, such as self-care, pet care, or cleaning, those activities could be performed on her own schedule or not at all on days she was unable to complete them. For these reasons, Clemmons's activities of daily living, when viewed holistically, are not incompatible with her testimony of debilitating symptoms.

Finally, after stating she was giving Clemmons's symptom testimony reduced weight, the ALJ found that Clemmons had received "appropriate" treatment and had no medication complications. The ALJ cited no record evidence in support of this finding. And, in her opinion she neither summarized the medical evidence, nor discussed Clemmons's treatment, medication, or any documentation of side effects. Regardless, neither party cited this statement as a reason the ALJ discounted Clemmons's symptom testimony. And, without any explanation or cited record support, the fact that Clemmons received treatment is not a reason to discount her testimony. *Cf. Fair v. Bowen*, 885 F.2d

597, 603 (9th Cir. 1989) (noting ALJ can discount symptom testimony if a claimant fails to seek treatment without explanation).

The only remaining reason the ALJ offered for discounting Clemmons's symptom testimony is that it was not consistent with the objective medical evidence. (AR 29-30.) The ALJ did not point to any medical evidence in the record to support this conclusion. Regardless, if the objective medical evidence fully explained a claimant's symptoms, then credibility would be irrelevant. Symptom testimony factors into the ALJ's decision only when the claimant's stated symptoms are not substantiated by the objective medical evidence. SSR 16-3p. Thus, it is error for an ALJ to discount credibility solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this was the only remaining basis for the ALJ's rejection of Clemmons's symptom testimony, it was insufficient to sustain it. The Court finds the ALJ failed to provide clear and convincing reasons to reject Clemmons's symptom testimony, and her ruling was not supported by substantial evidence.

**Opinion of Nurse Practitioner Yanina Shames**

Clemmons argues the ALJ erred in discounting the opinion of NP Yanina Shames. NP Shames completed a Mental Work Tolerance Recommendation and opined, on January 9, 2018, that Clemmons had marked limitations in understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, performing within a schedule and maintaining attendance, sustaining an ordinary routine without supervision, working near others without distraction, completing a work day or week without psychological symptom interruptions, performing at a consistent pace without more than typical rest periods, responding appropriately to supervisory criticism, responding appropriately to changes in work setting, travelling in unfamiliar places, and setting realistic goals or making independent plans; moderate limitations in getting along appropriately with co-workers; and mild limitations in remembering work procedures, maintaining attention and concentration for brief periods, and interacting with the general public. (AR 730-32.) The ALJ gave this opinion reduced weight because she found it

"overly restrictive and she offered no explanation for her findings." (AR 30.) The ALJ also found the opinion unsupported by her CODAC treatment records. (*Id.*)

By regulation, NP Shames was not an acceptable medical source at the time the ALJ issued her decision. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (noting that the regulations are outdated to the extent a treating nurse practitioner is considered an "other source" not a "medical source"); SSR 06-03-p.[2] However, the ALJ was required to consider evidence from medical sources that are not acceptable medical sources, such as nurse practitioners. 20 C.F.R. § 416.913(d); *Stout v. Comm'r Soc. Sec. Admin.* 454 F.3d 1050, 1056 (9th Cir. 2006). In fact, nurse practitioners and other professionals "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians"; thus, evaluation of their opinions is deemed important by the Social Security Administration. SSR 06-03-p. To reject such testimony, the ALJ was required to provide a germane reason. *Stout*, 454 F.3d at 1056.

The ALJ did not cite or discuss any CODAC treatment records in finding that NP Shames's opinion was not supported by the treatment records. Nor did she discuss or summarize those records elsewhere in her decision. Many of the records reveal Clemmons often experienced agoraphobia, auditory and visual hallucinations, frequent panic attacks, paranoia, anger control problems, and severe depression. (AR 351, 354, 425, 432, 442, 435-36, 444, 451, 453, 803, 807, 811, 819, 834-35.) Further, several nurse practitioners, including NP Shames, who saw Clemmons from 2014 to 2016, assigned her a GAF score of 49 (AR 352, 427, 431, 435, 438, 441, 444, 447, 450, 453); after three appointments, NP Shames adjusted that score down slightly to 40 in September 2016 and it remained at that level for the next two years (AR 432, 606, 802, 806, 810, 814, 818, 822, 826, 831, 834.) The GAF is a 100-point scale that measures a person's overall level of psychological,

---

[2] This Social Security Ruling was in effect at the time of the ALJ's decision on Clemmons's case but was rescinded effective March 27, 2017. On that date, the governing regulations were amended to include nurse practitioners as medical sources qualified to offer medical opinions. 20 C.F.R. § 404.1513(a)(2).

social, and occupational functioning on a hypothetical continuum. *See DSM IV* at 32, 34. Lower numbers indicate more severe symptoms. A rating of 49 indicates serious symptoms OR "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34. While a rating of 40 indicates some impairment in communication or reality testing OR "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.*

Certainly, some records documented areas in which Clemmons's functioning was often unimpaired (e.g., logical thinking, orientated x4, and good insight, judgment, and concentration) or periods during which Clemmons reported improvement in her symptoms. However, over the course of more than 5 years of records, no provider recommended tapering Clemmons off any medications due to improvement in symptoms. Instead, the records reflect only changes in medications to find something effective or to increase dosages because the medications were insufficient to address the severity level of Clemmons's symptoms. Overall, the assigned GAF scores and the majority of the CODAC treatment records reflect that Clemmons had serious symptoms and experienced significant limitations in functioning.[3] To the extent it was possible for the ALJ to identify particular treatment records that were inconsistent with NP Shames's opinion, she failed to do so. Therefore, inconsistency with the CODAC treatment records was not a germane reason to discount the opinion of NP Shames. *See Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017) (finding it was not legitimate to reject doctor's opinion as inconsistent with the treatment records when ALJ failed to identify any inconsistencies between the two).

Although opinions without explanation and support may be given less weight by an ALJ, that rationale falters when the opinion is offered by a long-time treating provider with numerous records documenting the claimant's symptoms and history. *See Garrison*, 759 F.3d at 1013; *see also Trevizo*, 871 F.3d at 677 ("there is no authority that a 'check-the-

---

[3] The ALJ acknowledged the assigned GAF score in her decision. (AR 29.) However, it was mentioned only in the discussion of symptom testimony, in which the ALJ said the low scores did not alter her conclusion that Clemmons's symptoms were not debilitating. (*Id.*) The ALJ did not offer a basis for rejecting the GAF scores and did not mention them in discussing NP Shames's opinion.

box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.") This rationale by the ALJ is extremely weak in light of NP Shames's multi-year well-documented treatment history that went undiscussed by the ALJ. Upon remand, the ALJ must reconsider the opinion by NP Shames in light of the treatment record.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004).

Here, Clemmons seeks solely a remand for further consideration. The Court finds that is the proper remedy. The ALJ failed to offer a substantive discussion on the medical record, particularly the treating records from CODAC. She cited the CODAC treatment records as a whole to support her statements that Clemmons obtained consistent treatment and was assigned a GAF of 40, and Clemmons's problems were "mainly related to family and losses." (AR 29.) That comprises the entire and only discussion of Clemmons's treatment records, yet the ALJ erroneously found Clemmons's symptom testimony and NP Shames's opinion inconsistent with those records. Upon remand, the ALJ must more fully consider the CODAC treatment records and gather further evidence as needed.

Accordingly, **IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 29th day of March, 2021.

_Lynnette C. Kimmins_
Honorable Lynnette C. Kimmins
United States Magistrate Judge